No. 82-466

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

IN THE MATTER OF THE GUARDIANSHIP
OF NAOMI NELSON, an incapacitated
person,

SHIRLEY GIARRANTANA,

       Petitioner and Respondent,

  -vs-

CHRISTINE THOMPSON,

       Respondent and Appellant.

Appeal from:  District Court of the Third Judicial District,
             In and for the County of Deer Lodge,
             The Honorable Robert Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Leonard J. Haxby, Butte, Montana

    For Respondent:

        Daniel McCarthy; Johnson, Skakles & Kebe,
        Anaconda, Montana
        James Dorr Johnson, Warm Springs, Montana
        Nick Rotering, Dept. of Institutions, Helena,
        Montana

Submitted on Briefs:  March 17, 1983

Decided:  May 12, 1983

Filed:  MAY 12 1983

*Ethel M. Harrison*
—————————————————
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Christine Thompson appeals from an order of the Third Judicial District Court appointing respondent, Shirley Giarratana guardian of the person and estate of Naomi Nelson, an incapacitated person.

Naomi Nelson is a 56 year old single woman who has been a patient at Warm Springs State Hospital since April 18, 1941. Christine Thompson and Shirley Giarratana are sisters of Naomi. They both reside in California.

On March 25, 1982, Christine Thompson filed a petition requesting that Naomi be declared incapacitated and that she be appointed Naomi's guardian. On May 25, 1982, a second petition for appointment was filed by Shirley Giarratana.

A hearing on the question of incapacity was held on May 26, 1982. At that time, Dr. Myron K. Meinhardt, a psychiatrist at the Warm Springs State Hospital, testified that Naomi Nelson suffers from schizophrenia which is chronic and undifferentiated. Dr. Meinhardt further stated in a report filed with the District Court that Naomi Nelson "is a severely regressed, institutionally dependent woman who will never be able to autonomously care for herself independent of the emotional structure and directions of trained nursing care staff."

Conde F. MacKay, a court-appointed visitor, also testified at the hearing and filed a report with the District Court. MacKay stated that when he visited with Naomi Nelson, it was virtually impossible to communicate with her. A nurse responsible for Naomi's care informed MacKay that his experience of being unable to communicate in a meaningful way

with Naomi was typical. MacKay reported that he found the facilities to be pleasant and clean, with trained staff present at all times.

At the May 26, 1982 hearing, the District Court also heard testimony regarding the guardianship proceeding. Christine Thompson testified that although she lives in California, she has visited with Naomi on two occasions in the last two years. Mrs. Thompson testified that she sends Naomi food packages, canteen money, and money for clothing. It was revealed on cross-examination that Mrs. Thompson has been the representative payee for Naomi's Social Security benefits since 1964. During that time, Mrs. Thompson has not accounted for the disbursal of the Social Security funds to any of her brothers and sisters, and has not made payments to the State of Montana for Naomi's care and maintenance for at least the past two years.

Raymond Nelson, a brother of Naomi Nelson, testified that Christine Thompson should not be appointed guardian because, among other reasons, Christine is prone to becoming overly concerned with having her own way in spite of consequences to others.

The guardianship proceeding was continued until September 1, 1982, so that Shirley Giarratana, who had suffered injuries in an automobile accident, could be present. At that time, Shirley Giarratana testified that she visits Naomi as often as possible and sends her packages. Mrs. Giarratana testified that she filed the guardianship petition because Naomi's best interests would not be served by the appointment of Christine Thompson as guardian.

Raymond Nelson, also present at the September 1, 1982 hearing, testified that Shirley Giarratana should be

appointed guardian of Naomi because she is very responsible, and is the only member of the family who has not had serious mental, emotional, or alcoholic problems. Robert Nelson, another brother of Naomi Nelson, testified that Christine Thompson should be appointed guardian of Naomi because she is compassionate and understanding with disabled persons.

On September 27, 1982, the District Court entered its findings of fact and conclusions of law. Naomi Nelson was found to be an incapacitated person who required the appointment of a guardian. The District Court concluded that both Christine Thompson and Shirley Giarratana were proper persons to be considered for the appointment of guardians, but that it was in Naomi's best interests that Shirley Giarratana be appointed as guardian.

Christine Thompson appeals and presents the following issues for our review:

1. Did the District Court err in failing to designate whether the guardianship is to be full or limited, pursuant to section 72-5-316(2), MCA?

2. Did the District Court err in appointing a guardian whose interests conflict with those of the ward, pursuant to section 72-5-312(4)(c), MCA?

3. Did the District Court err in failing to consider whether the appointed guardian would encourage the development of maximum self-reliance and independence of the ward, pursuant to section 72-5-306, MCA?

4. Did the District Court err in not allowing the testimony of Dr. Meinhardt regarding alternative treatment plans, pursuant to section 53-21-127, MCA?

5. Did the District Court err in failing to determine whether the appointed guardian would consider alternate

treatment plans for the ward, pursuant to section 53-21-127, MCA?

When reviewing guardianship proceedings, this Court is governed by the following standard of review:

> "Subject to statutory restrictions, the selection of the person to be appointed guardian is a matter which is committed largely to the discretion of the appointing court, and an appellate court will interfere with the exercise of this discretion only in case of a clear abuse."  39 Am.Jur.2d Guardian and Ward § 27, at 29.

In this case, appellant Christine Thompson does not claim that the District Court abused its discretion by appointing Shirley Giarratana as guardian of Naomi Nelson. We will therefore limit our review to whether any statutory restrictions were violated in the guardianship proceeding.

Christine Thompson's first allegation of error is that the District Court did not comply with section 72-5-316(2), MCA, which states:

> "The court may not invest a guardian with powers or duties beyond those sought in the petition and may, upon petition for full guardianship, create a limited guardianship or conservatorship when the court determines that a limited guardianship or conservatorship is all that is required for the care and protection of the incapacitated person. The order shall specify whether a full or limited guardianship is being created. In the case of a limited guardianship, the order shall specify the particular powers and duties vested in the limited guardian and the period for which the limited guardianship is created."  (Emphasis added.)

The District Court concluded in its order "that Shirley Giarratana be and she is hereby appointed as Guardian of the person and estate of Naomi Nelson, an incapacitated person . . ."  Nowhere in the District Court's order is there a specification of whether a full or limited guardianship was created.  However, a review of the findings of fact, which are supported by the record, indicates that the condition of Naomi Nelson is so serious that a limited guardianship or

conservatorship would not be sufficient to adequately provide for her protection and care. As stated by the District Court in its findings, ". . . Naomi Nelson suffers from symptoms of schizophrenia, has serious social withdrawal, delusionary thinking, unintelligible speech, erratic and impulsive behavior, and total dependence as a child-like individual, incapable of caring for herself and one who must be cared for in some type of structured setting." This finding demonstrates that the District Court's obvious intention was to create a full guardianship. In addition, the order did not "specify the particular powers and duties vested in the limited guardian and the period for which the limited guardianship is created" as is required by section 72-5-316(2), MCA. We therefore conclude that the term "guardian" was used by the District Court to imply a full guardian as permitted by section 72-5-305(3), MCA, and that the appointed guardian is to possess all the legal duties and powers of a full guardian as enumerated in section 72-5-321, MCA. In order to comply with section 72-5-316(2), MCA, the District Court's order should be amended to specify that a full guardianship was created.

Christine Thompson next contends that the District Court did not comply with section 72-5-312(4), MCA, which states in part, ". . . the court may not appoint a person . . . to be the guardian of an incapacitated person if the person . . . (c) has or is likely to have during the guardianship period interests that may conflict with those of the incapacitated person . . ." Mrs. Thompson contends that the appointment of Shirley Giarratana as guardian creates a conflict of interest because Shirley Giarratana is opposed to moving Naomi Nelson to California to seek alternative treatment. Christine

Thompson asserts that this opposition demonstrates that Shirley Giarratana does not have the best interests of her ward in mind. A review of the record, however, reveals that Shirley Giarratana has seriously considered moving Naomi Nelson to California, but finds that course to be impracticable. Shirley Giarratana testified that she discussed the possibility of moving Naomi to California with seven or eight doctors, none of whom recommended that Naomi be moved. It is apparent from the record that Shirley Giarratana is only interested in Naomi Nelson's well-being. We therefore can find no evidence that a conflict of interest exists between Shirley Giarratana and Naomi Nelson.

The next allegation of error is that the District Court failed to consider whether Shirley Giarratana would encourage the development of maximum self-reliance and independence of Naomi Nelson. Christine Thompson asserts that this consideration is mandated by section 72-5-306, MCA, which states in part:

> "Purpose and basis for guardianship. Guardianship for an incapacitated person may be used only as is necessary to promote and protect the well-being of the person. The guardianship must be designed to encourage the development of maximum self-reliance and independence in the person and may be ordered only to the extent that the person's actual mental and physical limitations require it . . ."

It is clear from this statute that a guardian must not only encourage the development of maximum self-reliance and independence, but must also promote and protect the well-being of the incapacitated person. It is also clear from a review of the record that Shirley Giarratana will promote and protect the well-being of her sister by ensuring that she continues to receive the highest standard of care and treatment available. In this case, the protection of

Naomi Nelson's well-being is the most important consideration because, as stated by Dr. Meinhardt, "Mrs. Nelson is a severely regressed, institutionally dependent woman who will never be able to autonomously care for herself independent of the emotional structure and directions of a trained nursing care staff . . . Hence, she represents an incapacitated person unable to perform any functions for personal life care or her own personal business financial life outside of a hospital setting."

The last two issues raised by Christine Thompson are not properly before this Court because they involve statutes which pertain to commitment proceedings, not guardianship proceedings. Although the two proceedings may overlap, they involve different procedures which must be followed to ensure that incapacitated persons receive the full protection of the law. "District Courts must identify and adhere to the proper procedures and standards to be used in the proceedings before them." In the Matter of Aschenbrenner (1979), 182 Mont. 540, 553, 597 P.2d 1156, 1164. (See also In Re the Guardianship of Evans (1978), 179 Mont. 438, 587 P.2d 372, wherein this Court distinguished the procedures involved in the guardianships of minors and the guardianships of incompetents.) In this case, the issue of commitment was not before the District Court. The District Court did, however, properly follow the procedures mandated by the statutes pertaining to guardianship proceedings.

On remand, the District Court will amend its order to specify that a full guardianship was created. The District Court's order is affirmed in all other respects.

_____
                   John C. Sheehy
                        Justice

We Concur:

John Conway Harrison
_____

_____

_____

L. C. Gulbrandson
_____
             Justices

- 9 -