No. 00-104

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 37

302 Mont. 1

11 P.3d 539

IN RE THE CUSTODY OF JOHN REMINGTON KRAUSE,

KADE KRAUSE,

Petitioner and Appellant,

v.

JULIE E. SISK,

Respondent and Respondent.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Beaverhead,

Honorable Frank M. Davis, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Christine D. Somers, Attorney at Law, Butte, Montana

For Respondent:

Andrew P. Suenram, Hoffman and Suenram, Dillon, Montana

Submitted on Briefs: September 28, 2000
Decided: March 1, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Kade Krause (Krause) appeals from the final parenting determination of the Montana Fifth Judicial District Court, granting primary custody of his son to the boy's mother, Julie Sisk (Sisk). Krause contends that the District Court's appointment and use of a guardian *ad litem* violated his due process rights as a parent. We affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

¶2 Krause and Sisk lived together in Jackson, Montana, but were never married. The subject of the custody proceeding, John Remington Krause (John), is their infant son. The couple had what was described as a volatile relationship, and in July of 1999 Sisk moved to Michigan, taking John with her.

¶3 Krause immediately retained counsel and filed an *ex parte* petition for a parenting determination pursuant to § 40-4-220(2)(a), MCA. The District Court temporarily adopted Krause's interim parenting plan, granted him temporary custody of his son and set the matter for a hearing. Sisk filed motions for appointment of a guardian *ad litem* and to quash the interim parenting plan. Three days later, the District Court appointed Mary Shafaieh (Shafaieh), a local volunteer, to serve as guardian *ad litem*. She was instructed to conduct interviews and recommend an appropriate parenting plan.

¶4 The District Court conducted a hearing on August 31, 1999, although the parties disagree as to whether this was a show cause hearing on the interim parenting plan or an evidentiary hearing for a final parenting determination. Both Krause and Sisk were represented by counsel and each called a number of witnesses. The guardian *ad litem* was

also present. Although neither party asked her to testify, she apparently gave the District Court a preliminary recommendation in chambers. At the conclusion of the hearing, the District Court issued a temporary order vacating its interim parenting plan for thirty days and approving Sisk's interim parenting plan for the same period. It also ordered Shafaieh to provide copies of her final report to the parties within ten days and directed the parties to submit proposed findings of fact, conclusions of law and orders no more than 20 days thereafter. The District Court declared that, upon submission of the final report and proposed findings, the matter would be deemed submitted for a final decision.

¶5 The guardian filed her report with the District Court on September 10, 1999. In it she expressed a concern that Krause may "have a short temper and low tolerance for stressful situations." Noting that Sisk had a stable environment and a good support system with family members in Michigan, Shafaieh recommended that the child remain with his mother. Krause and Sisk each received a copy of the report.

¶6 Following release of the report, Krause sought discovery of the guardian *ad litem*'s records and filed motions to terminate Shafaieh and appoint a new guardian. The District Court denied the attempted discovery as well as both motions.

## DISCUSSION

¶7 Krause couches most of his issues in terms of due process violations. However, in large part, his due process claims merely allege that the District Court either made incorrect discretionary rulings or misapplied the law. Where appropriate, we have restated the issues in those terms.

¶8 Issue 1. Did the District Court err when it appointed a lay volunteer as guardian *ad litem* without a prior hearing?

¶9 Characterizing the guardian *ad litem* as an expert witness, Krause argues that the District Court erred by appointing a "lay volunteer with no experience or qualifications" and by making the appointment without first providing him an opportunity to examine or contest her qualifications. He contends that he should have been allowed ten days in which to respond to Julie's motion for appointment and that he was entitled to a hearing on the matter.

¶10 A. Did the District Court err by appointing a lay volunteer to act as guardian *ad litem*?

¶11 Krause likens a guardian *ad litem* to an expert witness and contends that a lay volunteer is unqualified to serve in that capacity. He argues that the District Court committed reversible error by appointing a citizen volunteer with "no known or disclosed experience or qualifications . . . and who could not have qualified to testify as an expert witness with respect to her recommendations or opinions." This view fundamentally misconstrues the role of the guardian *ad litem* in a child custody proceeding.

¶12 A guardian *ad litem* is an officer of the court, assigned to represent the interests of a minor. Therefore, selection of a guardian *ad litem* is a matter which is committed largely to the discretion of the appointing judge. This Court will interfere with the exercise of that discretion only in a case of clear abuse. Matter of Watson (1997), 283 Mont. 57, 60, 939 P.2d 982, 984 (citing Matter of Nelson (1983), 204 Mont. 90, 94, 663 P.2d 316, 318).

¶13 Montana law provides few restrictions on the court's discretion to choose a guardian *ad litem*. Generally, the court may appoint any person whose appointment would be in the best interests of the child. See § 72-5-223, MCA. There is no requirement that the person appointed even be a wholly disinterested or neutral person. *Watson*, 283 Mont. at 61, 939 P.2d at 985. The only specific requirement is that the person appointed must not have interests adverse to those of the child. *Watson*, 283 Mont. at 60, 939 P.2d at 984. Although Krause sought to terminate the guardian and strike her report, he has never alleged, either to the District Court or to this Court on appeal, that the guardian *ad litem* was unqualified under this standard.

¶14 Krause's argument, in fact, is not addressed so much to the guardian's qualifications as it is to the conclusions in her report. He argues that the report contains inaccuracies and that the guardian *ad litem* "failed to disclose her work product to the parties as required by law." These are serious contentions that properly should have been brought to the District Court's attention during a final hearing-but that is a separate issue. Nonetheless, allegations about the guardian's conclusions are not relevant to the question of whether the District Court had the authority to appoint a lay volunteer in the first instance. Krause never argues that the guardian *ad litem* had anything but the child's best interests at heart or that her interests were in any way adverse to those of the child. As such, he provides this Court with no basis to conclude that the District Court abused its discretion when it appointed a lay volunteer to act as guardian *ad litem*.

¶15 B. Did the District Court violate Krause's due process rights when it appointed a guardian *ad litem* without a prior hearing?

¶16 Our review of constitutional questions is plenary. State v. Pritchett, 2000 MT 261, ¶ 27, 302 Mont. 1, ¶ 27, 11 P.3d 539, ¶ 27 (citing State v. Anderson, 1998 MT 258, ¶ 6, 291 Mont. 242, ¶ 6, 967 P.2d 413, ¶ 6). Our standard of review for conclusions of law is whether the trial judge's interpretation of the law is correct. In re A.R.A. (1996), 277 Mont. 66, 70, 919 P.2d 388, 391.

¶17 Montana law permits a court to appoint a guardian *ad litem* to represent the interests of a minor dependent child. Section 40-4-205(1), MCA. This appointment may be made by the court on motion of either parent or by the court on its own motion. *See* Commissioner's Note to § 40-4-205(1), MCA. Krause concedes that the District Court has authority to appoint a guardian *ad litem* on its own motion but contends that the District Court should have afforded him an opportunity for a hearing and that, when it did not do so, it violated his right to due process under Article II, Section 17, of the Montana Constitution and under the Fourteenth Amendment to the United States Constitution.

¶18 Krause argues that both the Montana and United States constitutions provide that no person shall be deprived of liberty without due process of law; that parents have a protected liberty interest in the care, custody and management of their children; and that due process requires both notice and a hearing. This argument is well-taken, as far as it goes, but Krause fails to argue or provide any authority for the necessary premise of his challenge-that by appointing a guardian *ad litem*, the District Court in some way *deprived* him of a fundamental liberty.

¶19 This Court has consistently held that parents have a liberty interest in the custody of their children. However, absent any showing that appointment of a guardian *ad litem* somehow infringes upon this fundamental interest, we cannot override the District Court's clear statutory authority to appoint a guardian *ad litem* on its own motion.

¶20 Issue 2. Did the District Court err by not allowing the parties access to the data and reports of the guardian *ad litem* prior to the custody hearing?

¶21 The District Court appointed the guardian *ad litem* on August 23, 1999, just seven days before the temporary custody hearing. The guardian did not file her final written report with the District Court and the parties until September 10, 1999. After the August 31, 1999 hearing but before the District Court issued its final ruling, Krause sent a discovery request to the guardian *ad litem* which included interrogatories directed toward

her qualifications and to studies or reference materials she relied upon in forming her recommendation to the court. Sisk objected to this discovery, arguing that, as the temporary custody hearing had already been held and proposed findings had been submitted by both parties, further discovery served no useful purpose. The District Court ruled that the guardian was not subject to discovery and denied the request.

¶22 Generally, district courts have substantial discretion to control discovery. Anderson v. Werner, 1998 MT 333,¶ 13, 292 Mont. 284, ¶ 13, 972 P.2d 806, ¶ 13. Krause argues that, in this case, the scope of that discretion is defined by § 40-4-215, MCA, which specifically compels release of the reports and data of a guardian *ad litem*. Sisk responds that this provision applies only to professional investigations by counselors, social workers and doctors and not to guardians *ad litem*. We disagree with Sisk's interpretation of the statute.

¶23 Section 40-4-215, MCA, provides:

> (1) If . . . the court finds that a parenting proceeding is contested, the court may order an investigation and report concerning parenting arrangements for the child. The investigator may be the child's guardian ad litem . . . .
>
> . . .
>
> (4) The court shall mail the investigator's report to counsel and to any party not represented by counsel at least 10 days prior to the hearing. When consistent with state and federal law, the investigator shall make available to counsel and to any party not represented by counsel the investigator's file of underlying data and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (3), and the names and addresses of all persons whom the investigator has consulted.

¶24 The District Court, when it appointed the guardian *ad litem*, directed her to "conduct interviews with both parties and other relevant witnesses" and to "make a recommendation to the Court regarding a parenting plan." Having been ordered by the District Court to make an investigation and report, § 40-4-215(4), MCA, requires that the guardian disclose her data, underlying reports, and names of persons consulted, to the extent that release of that information is consistent with state and federal law.

¶25 Despite the statute's provision that the investigator, to whom the subsequent disclosure

requirements apply, "may be a guardian *ad litem*," Sisk asserts that § 40-4-215, MCA, is inapplicable. She notes that our reported cases applying § 40-4-215, MCA, all deal with professionals other than guardians *ad litem*-social workers, counselors and doctors- and concludes, on that basis, that the reporting requirements are applicable only to those professionals. We disagree.

¶26 First, the absence of case law is not, generally, authority for the proposition that a statute does not apply to a particular category of persons-especially when the clear language of the statute indicates otherwise. Second, none of the cases cited by Sisk address the question of the type of investigator to which the disclosure provision applies. Sisk is correct that the limited number of our reported cases dealing with the application of § 40-4-215, MCA, all deal with investigations conducted by social workers and other professionals. However, none of these cases hold that § 40-4-215, MCA, *only* applies to social workers, counselors and doctors and not to guardians *ad litem*. In contrast, the statute clearly declares that the investigator, to whom the disclosure requirement applies, may be a guardian *ad litem*.

¶27 Sisk contends next that, since the guardian *ad litem* was appointed under § 40-4-205, MCA, which does not contain the disclosure requirements of § 40-4-215, MCA, no disclosure is required. This argument is unconvincing. Section 40-4-205, MCA, authorizes the court to appoint a guardian *ad litem*. That it does not address disclosure of a guardian's reports does not mean that disclosure is not required. It only means that the section does not address the issue.

¶28 We conclude, based on the plain language of the statute, that the disclosure requirements of § 40-4-215, MCA, apply to court-appointed guardians *ad litem*. When consistent with state and federal law, the guardian's reports, data and persons consulted must be disclosed to the parties at least ten days prior to a hearing on the matter. We hold, therefore, that the District Court abused its discretion when it denied Krause access to this information. Because this provision requires that the information be released at least ten days prior to a hearing on the matter, we are ordering the District Court to order release of the statutorily-required information and to conduct a final evidentiary hearing on custody no fewer than ten days thereafter. We note that § 40-4-215, MCA, does not require disclosure of information on the guardian's qualifications and experience. It remains within the discretion of the trial judge to order or limit discovery of such information.

¶29 Issue 3. Did the District Court improperly use confidential criminal justice

information?

¶30 After the hearing but before the District Court issued its final decision, local law enforcement officers cited Krause for DUI. After learning of the incident, the District Court directed Shafaieh to investigate and prepare a supplemental report. Shafaieh investigated and reported that Krause had been cited for DUI and that a blood test taken after the incident indicated a blood alcohol level in excess of the legal limit. The District Court considered this information and incorporated it into its final findings of fact, conclusions of law and order.

¶31 Krause states his issue on appeal as whether the "District Court err[ed] by specifically requesting the consideration of confidential criminal justice information not properly in the record?" It is not clear from his argument whether he considers it improper for the District Court to have directed the guardian to acquire this information, for the District Court to have considered it in reaching its final custody decision, or both. In any case, he provides no authority for either contention and, on that basis, we decline to address the issue.

¶32 The argument portion of an appellate brief must contain the contentions of the appellant with respect to the issues presented with citations to the authorities relied on. Rule 23(a)(4), M.R.App.P. This Court has repeatedly held that we will not consider unsupported issues or arguments. *See* In re Pfennings, 1999 MT 250, ¶ 32, 296 Mont. 242, ¶ 32, 989 P.2d 327, ¶ 32, and the cases cited therein.

¶33 Instead of addressing the stated issue, Krause argues that, by publishing information about Krause's DUI citation and excessive blood alcohol level in a nonconfidential order, the District Court violated provisions of the Montana Criminal Justice Information Act of 1979 (Act). This Act prohibits "dissemination" of "confidential criminal justice information" except under conditions designed to balance the public's right to know with the privacy interests of the parties involved. *See* § 44-5-303, MCA. Sisk responds that the Act authorizes the court to disseminate "criminal history information" when it finds it necessary to do so. *See* § 44-5-302, MCA. Neither Krause nor Sisk address the meaning of the relevant definitions or their applicability to the DUI information at issue here. Other than asserting that their favored rule is applicable, neither cites any authority for their respective conclusions.

¶34 Analysis of this issue properly requires an inquiry into the meaning of "criminal

history information" versus "confidential criminal justice information;" whether the information at issue here fits either of those definitions; whether the District Court's inclusion of that information in a nonconfidential order constitutes "dissemination" as that term is defined by law; whether the District Court's action satisfied the procedural requirements of the statute; and whether the court appropriately weighed the relevant privacy and disclosure interests involved. Not one of these questions is addressed in the parties' arguments, and this Court declines to supply the missing analysis.

¶35 Issue 4. Did the District Court err when it considered the temporary recommendations of the guardian *ad litem* following a hearing in which the guardian did not testify or present her recommendations to the parties?

¶36 The guardian did not testify or make any oral recommendations in open court during the hearing on August 31, 1999. Instead, she made a confidential report to the judge immediately afterwards. Krause contends that this procedure violated his due process rights. The crux of Krause's complaint is not that he was denied an opportunity to examine the guardian; she was available to testify at the hearing and could have been called by either party. Rather, he asserts that, without access to the guardian's report and sources prior to the hearing, he had no basis upon which to conduct a meaningful examination. Since we have addressed this issue above and concluded that he was entitled to this information prior to the hearing, we need not consider it further.

¶37 Issue 5. Did the District Court err by failing to conduct a final evidentiary hearing?

¶38 Krause argues that the purpose of the August 31, 1999 hearing was to show cause why the District Court's interim parenting plan should not remain in effect until a final parenting determination. He contends that by resolving the merits of his petition for a final parenting plan at a hearing held to determine temporary custody, the District Court denied him an opportunity to be heard and that this was a violation of his due process rights. Having already determined that Krause is entitled to his discovery and a new hearing on other grounds, we decline to address the merits of this issue.

¶39 We affirm in part, reverse in part and remand to the District Court for discovery consistent with this opinion and for a final evidentiary hearing and parenting determination.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER