No. 03-261

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 267

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF:

EVELYN JEAN GILROY,

        An Incapacitated Person.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DG 2001-008(A)
                    Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Bryan B. Norcross, Norcross Law Office, Kalispell, Montana

        For Respondent:

                James D. Moore, Attorney at Law, Kalispell, Montana

                           Submitted on Briefs:  February 3, 2004

                                   Decided:   September 28, 2004

Filed:

                     _____
                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Bruce David Gilroy (David) appeals from the Order entered by the Eleventh Judicial District Court, Flathead County, requiring him to transfer his interest in four vehicles and real property to the estate of Evelyn Jean Gilroy (Mrs. Gilroy), and denying his request for removal of Mrs. Gilroy's Guardian of the person, and Conservator of the estate (Guardian), William "Ike" Eisentraut (Eisentraut).  We affirm.

¶2    We address the following issues on appeal:

¶3    1.  Did the District Court err in determining that placement of David's name on vehicle titles was a revocable qualified gift that was properly revoked?

¶4    2.  Did the District Court err in determining that the transfer of real property to David was a revocable qualified gift that was properly revoked?

¶5    3.  Did the District Court err in concluding there was no reasonable cause to remove the Guardian?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6    Mrs. Gilroy was born in 1918 and is 86 years old.  She married Bruce Gilroy (Mr. Gilroy), with whom she had four children.  Mr. and Mrs. Gilroy, who resided in Kalispell, Montana, jointly owned four vehicles,[1] a 1980 Budd mobile home, and their residence at 406 Hawthorne Avenue in Kalispell.  In the fall of 1999, Mr. and Mrs. Gilroy decided to add

---

[1]The four vehicles included a 1971 Plymouth, 1979 Lincoln, 1984 Paro motor home, and a 1984 Ford Truck.

their son David's name to the titles of the mobile home and vehicles for the purpose of controlling the ultimate distribution of their personal property upon their deaths.

¶7 The titles to the four vehicles were issued with a Kalispell address and were in the sole possession and control of Mr. and Mrs. Gilroy. By contrast, the title to the 1980 Budd mobile home was issued with a Polson address and was in the sole possession and control of David, who purchased the mobile home after he obtained a $4,000 loan from Mr. and Mrs. Gilroy. The sum had not yet been repaid at the time of trial.

¶8 Prior to Mr. Gilroy's death in May 2000 there was no indication that either Mr. or Mrs. Gilroy was incapable of managing their personal or financial affairs. However, after Mr. Gilroy's death, Mrs. Gilroy became sole owner of their residence in Kalispell, and on July 21, 2000, transferred this property by warranty deed with right of survivorship to herself and David. David did not contribute to the purchase or maintenance of the residence and has not assumed any of the residence's expenses. The purpose of the transfer was to avoid probate by facilitating a property transfer upon Mrs. Gilroy's death while allowing Mrs. Gilroy to maintain sole control over the residence until such event.

¶9 On August 31, 2000, Mrs. Gilroy was admitted to Heritage Place, an extended care facility in Kalispell, Montana, to recuperate from a fall resulting in a broken hip. While at Heritage Place, Mrs. Gilroy was evaluated by Dr. Christopher Gill, Dr. Patrick J. Burns and clinical psychologist Dr. Edward H. Trontel. All three doctors concluded that Mrs. Gilroy suffered from Alzheimer's disease and was not capable of managing her own personal or

financial affairs. In addition, they determined it was in Mrs. Gilroy's best interest to continue placement in the Alzheimer's unit at Heritage Place.

¶10 Trudy Eckley (Trudy), the daughter of Mrs. Gilroy, filed a petition on February 14, 2001, seeking a determination that Mrs. Gilroy was no longer able to manage her personal and financial affairs as a result of Alzheimer's disease. Because David had appropriated substantial property and monies from Mrs. Gilroy's estate, and due to disagreements among the children concerning the care of Mrs. Gilroy, Adult Protective Services recommended that an independent person be appointed as Guardian.

¶11 On April 26, 2001, all four children of Mrs. Gilroy and her appointed Guardian Ad Litem stipulated that appointment of Eisentraut as Guardian would be in Mrs. Gilroy's best interests. The following day, the District Court appointed Eisentraut as Guardian for Mrs. Gilroy and her estate.

¶12 Following Eisentraut's appointment, he sought to locate and consolidate Mrs. Gilroy's assets because he determined that Mrs. Gilroy's estate was running short of funds with which to defray the costs of her care. On October 3, 2001, Eisentraut filed a petition seeking the return of funds from Mrs. Gilroy's bank account,[2] the return of certain firearms,[3] and the transfer of the interest in Mrs. Gilroy's residence and the titles to the vehicles to her estate.

---

[2]The funds in the bank account are not at issue; David subsequently returned the funds to Eisentraut before trial and is not contesting the return.

[3]The firearms are not at issue on this appeal.

4

David, who refused to relinquish control over the property, filed a motion on November 14, 2001, to remove Eisentraut as the Guardian.

¶13     On February 20, 2003, the District Court denied the motion to remove Eisentraut as Guardian. It further ordered David to execute the necessary documents for return of the four vehicles and residence to the estate. It directed that David retain possession of certain firearms with exception of one which was designated for his brother, Art Gilroy. The order also determined that David would continue to possess the mobile home and that Mrs. Gilroy's name be removed from its title subject to the condition that he repay the $4,000 debt to Mrs. Gilroy.

¶14     In addition, the District Court ordered Trudy to compile and provide an inventory of Mrs. Gilroy's personal property, including furnishings and jewelry, to be managed for the benefit of Mrs. Gilroy.

¶15     On March 17, 2003, David filed a timely notice of appeal.

## STANDARD OF REVIEW

¶16     This Court will not disturb a district court's findings of fact unless its findings are clearly erroneous. *Baltrusch v. Baltrusch*, 2003 MT 357, ¶ 23, 319 Mont. 23, ¶ 23, 83 P.3d 256, ¶ 23. A court's findings are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *In Re Estate of Orr*, 2002 MT 325, ¶ 12, 313 Mont. 179, ¶ 12, 60 P.3d 962, ¶ 12. We review a district court's conclusions of law to determine whether the interpretation of the law is correct. *Baltrusch,* ¶ 23.

## DISCUSSION

**¶17** *Did the District Court err in determining that placement of David's name on the vehicles' titles was a revocable qualified gift that was properly revoked?*

¶18 David argues that the District Court erred in determining that placement of David's name on the titles to the vehicles was a qualified gift that could be revoked by Mrs. Gilroy or her Guardian. David specifically asserts that after Mr. Gilroy's death in May 2000, Mr. Gilroy's interest in the vehicles passed equally to both Mrs. Gilroy and David. David claims that once a donor dies, the gift is complete, and therefore his interest in the vehicles vested upon the death of Mr. Gilroy.

¶19 The Guardian contends that the evidence shows David's name was placed on the titles to the vehicles as an estate planning mechanism and that even if the transfer was a valid gift, it was to take effect only upon the deaths of both Mr. and Mrs. Gilroy. The Guardian notes that David did not purchase or make a financial contribution to the vehicles, which supports his argument that the transfer was qualified and therefore not an irrevocable gift.

¶20 Section 70-3-201, MCA, provides that "a gift in view of death is one which is made in contemplation, fear, or peril of death with intent that it shall take effect only in case of the death of the giver." Furthermore, "a gift in view of death may be revoked by the giver at any time." Section 70-3-203, MCA.

¶21 During his trial testimony, David admitted he had no expectation of using or possessing the vehicles while his parents were alive. His testimony thus revealed that the vehicle title transfers were not intended to create a present possessory interest and were made

6

conditional upon the death of both Mr. and Mrs. Gilroy. In addition, Trudy's testimony corroborated David's statements that he had agreed to transfer the property back and had never claimed a present, gifted interest in the property.

¶22 Because the evidence established that addition of David's name to the titles of the four vehicles was for purposes of controlling their ultimate distribution upon the deaths of both Mr. and Mrs. Gilroy, and that the vehicles were to remain for the use and benefit of the Gilroys for so long as they desired, the transfer was a qualified transfer which was revocable by Mrs. Gilroy or her Guardian after Mr. Gilroy's death.

¶23 The distribution of property to another may validly be accomplished by designation upon its title, however, pursuant to § 70-3-203, MCA, such transfers, when made in view of death, are qualified and may be revoked by the giver at any time. Here, the transfers were made conditional on the deaths of both Mr. and Mrs. Gilroy which allowed for revocation thereof prior to the occurrence of the second death. Therefore, we hold that the District Court did not err in concluding that placement of David's name on the vehicles' titles was a revocable qualified gift that was later revoked by Mrs. Gilroy's Guardian.

¶24 *Did the District Court err in determining that the transfer of real property to David was a revocable qualified gift that was properly revoked?*

¶25 David contends that Mrs. Gilroy, intending to avoid probate, granted him a present interest in her home at 406 Hawthorne Avenue in Kalispell, Montana, by executing and recording a warranty deed with right of survivorship in both her and David's name. David asserts that under § 70-1-509, MCA, a grant duly executed is presumed to have been

7

delivered at its date and that the recording of such deed strengthens this presumption, which may only be overcome by clear and convincing evidence. *Gross v. Gross* (1989), 239 Mont. 480, 482, 781 P.2d 284, 285.

¶26 The Guardian responds that *Gross* is not applicable because the Court in *Gross* was dealing only with subsequent, uncorroborated testimony on behalf of the grantor in regard to the grantor's intent, whereas, in the case at hand, the evidence of intent was present within the period immediately preceding the signing of the deed and was fully corroborated by other witnesses. We agree that *Gross* is so distinguishable.

¶27 On direct examination, David admitted that, prior to the transfer of the property to him, he had agreed to transfer the property back to Mrs. Gilroy upon her request in the event she wanted to sell the home. David's testimony was corroborated by two other witnesses. Shirley Schliep, David's girlfriend, and a clerk at the Clerk and Recorder's Office, Rebecca Eslick, each testified that they heard David tell Mrs. Gilroy that he would deed the house back to Mrs. Gilroy on her request.

¶28 In Montana, delivery occurs by either "words, acts, or both." *Hauseman v. Koski* (1993), 259 Mont. 498, 502, 857 P.2d 715, 717. "The law does not require actual handing over of the document so long as it is handled in a way that unequivocally shows the intention of the settlor." *Koski*, 259 Mont. at 502, 857 P.2d at 717. Here, Mrs. Gilroy's intention that David would transfer the house back to her upon request was expressed and confirmed by David prior to the signing of the deed.

8

¶29    Consequently, the same analysis under § 70-3-203, MCA, that we applied in regard to the vehicles is applicable here.  Mrs. Gilroy's purpose in deeding an interest in the property to David was to control the distribution upon her death.  Therefore, we hold that the District Court did not err in concluding that placement of David's name on the real property by way of a deed was a qualified and revocable gift that was later revoked by Mrs. Gilroy's Guardian.

¶30    ***Did the District Court err in concluding there was no reasonable cause to remove the Guardian?***

¶31    David argues there was reasonable cause to remove Eisentraut as the Guardian due to his mismanagement of Mrs. Gilroy's estate and because he did not act in Mrs. Gilroy's best interests.  David specifically alleged that Eisentraut failed to account for Mrs. Gilroy's assets, did not promptly assist in the return of Mr. Gilroy's rings from Trudy, allowed Trudy's son to live in Mrs. Gilroy's home without paying rent, and allowed Trudy to take possession of Mrs. Gilroy's property without her knowledge or permission.  David further contends that Eisentraut should have removed Mrs. Gilroy from Heritage Place to a lesser restrictive facility and that because of his failure to do so, did not act in Mrs. Gilroy's best interests.

¶32    Eisentraut questions David's intentions by arguing that the issue of his removal was not raised by David until after Eisentraut petitioned the District Court to require David to restore the estate assets of Mrs. Gilroy which were in his possession.  Eisentraut contends he entered a family "war zone" without any direct interest in any disposition at the

9

recommendation of Adult Protective Services, but that, in any event, he has acted in Mrs. Gilroy's best interests.

¶33 Pursuant to § 72-5-325, MCA, a district court, after a hearing regarding a ward's welfare, may remove the guardian if it is in the best interests of the ward. Further, the district court may remove a conservator for good cause. Section 72-5-414, MCA. This Court has held that it will "interfere with the [guardian's] exercise of discretion only in a case of clear abuse." *In Re Custody of Krause*, 2001 MT 37, ¶ 12, 304 Mont. 202, ¶ 12, 19 P.3d 811, ¶ 12; *Matter of Guardianship of Nelson* (1983), 204 Mont. 90, 94, 663 P.2d 316, 318.

¶34 After hearing, the District Court concluded that there was no credible evidence that Eisentraut had not acted in Mrs. Gilroy's best interest. All of the Gilroy children agreed that Mrs. Gilroy be placed in assisted living. Subsequently, Eisentraut participated in a care plan meeting with the Heritage Place employees and interviewed Mrs. Gilroy, her children and Mrs. Gilroy's physicians and concluded it would be in Mrs. Gilroy's best interests to remain in the Alzheimer's unit at Heritage Place. Furthermore, the evidence shows that Eisentraut thoroughly investigated and accounted for Mrs. Gilroy's real and personal property for the purpose of sustaining her ongoing care and treatment.

¶35 We conclude that the District Court's findings were supported by substantial credible evidence and the District Court did not err in concluding the evidence was insufficient to warrant removal of Eisentraut as Guardian to Mrs. Gilroy and her estate.

¶36 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER