FILED

02/07/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0378

DA 16-0378

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 22

IN THE MATTER OF THE ESTATE OF:

M.D.,

    A Person in Need of a Full Guardian.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and For the County of Sheridan, Cause No. DG-2015-3
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Garth H. Sjue, Lisa Marie Six, Crowley Fleck, PLLP,
Williston, North Dakota

    For Appellee:

        Loren J. O'Toole, II, O'Toole Law Firm, Plentywood, Montana

Submitted on Briefs:  November 16, 2016

Decided:  February 7, 2017

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Robert Domonoske (Robert) appeals from the order of the Montana Fifteenth Judicial District Court, Sheridan County, appointing his brother, Lloyd Domonoske (Lloyd), as guardian for their mother, M.D., an incapacitated person.  We affirm.

¶2     We restate the issue on appeal as follows:

> *Did the District Court err in appointing Lloyd, rather than Robert, as full guardian for M.D.?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     M.D. is a seventy-six-year-old woman who suffers from Alzheimer's disease and dementia.  She was married to Kenneth Domonoske (Kenneth) until his death in 2015 and they have four adult sons:  Lloyd, Robert, Brad, and Doug.  Kenneth and M.D. have owned a family farm outside of Plentywood, Montana, since 1958.  Prior to his father's death, Lloyd, who also lives in Plentywood, cared for both of his parents, taking them to doctor's appointments, cooking their meals, picking up their prescriptions, and helping with all aspects of their personal care.

¶4     Lloyd has also taken an active role in maintaining the family farm.  Kenneth and M.D. previously struggled to keep the farm afloat, filing for bankruptcy twice.  Both Lloyd and his brother Brad expended personal funds to keep the farm operating and, since 2000, Lloyd has helped to work the farm.  Lloyd also co-signed a loan with his parents to refinance the debt his parents had incurred on the property.  In 2009, Kenneth and M.D. set up a $21,544.10 annual cash lease with Lloyd for 742.8 tillable acres on the farm.  The lease payment Lloyd makes to M.D. is used to pay the farm loan.

2

Additionally, Lloyd, Kenneth, and M.D. have always each owned a few head of cattle and Lloyd has cared for all the cattle on the farm.

¶5 On October 21, 2015, just before Kenneth's death, Lloyd filed a Petition for Appointment of Full Guardian, requesting that he be appointed guardian of M.D. due to her inability to write checks and manage her own affairs. Shortly after his father's death, Lloyd moved to the family farm to take care of M.D.'s personal needs. Lloyd also manages the benefits she is entitled to receive from the Social Security Administration and the Department of Defense. Initially, Robert, Brad, and Doug signed consents for Lloyd to serve as M.D's guardian. After the death of their father, Robert and Doug revoked their consents and opposed Lloyd's petition.

¶6 In April 2016, Lloyd placed M.D. in the Sheridan Memorial Nursing Home so he could dedicate more time to the calving and farming operations. The nursing home is one block away from Lloyd's house and both he and his wife Patti Domonoske visit M.D. on a daily basis. On April 12, 2016, the District Court held a hearing, taking testimony and receiving exhibits on the petition. Brad testified in support of Lloyd's petition, in part based upon a recent trip he made to visit M.D. in the nursing home. He testified in support of her placement there because the facility is located in M.D.'s hometown and many of the residents and staff know her.

¶7 Robert and Doug, on the other hand, asked the court to appoint Robert as guardian for M.D. Robert lives in Wilton, North Dakota, and works as an over-the-road trucker. He testified that he is on the road approximately 265 days per year. As of the date of the District Court hearing, he had not visited M.D. for six months and had not personally

3

assessed the quality of care she was receiving in the nursing home. Nonetheless, Robert testified that he planned to place M.D. in a facility in Mandan, North Dakota, maintaining that its memory care unit would best suit her needs. No medical testimony was offered to support Robert's opinion.

¶8 On May 24, 2016, the District Court entered its Findings of Fact, Conclusions of Law, and Order, finding M.D. to be an incapacitated person pursuant to § 72-5-101(1), MCA,[1] and in need of a full guardian. The court further found that it was in M.D.'s best interest that Lloyd be appointed as her guardian. Robert filed a timely appeal.

**STANDARD OF REVIEW**

¶9 This Court reviews a district court's appointment of a guardian and determination of the scope of the guardian's responsibilities for an abuse of discretion. *In re Estate of West*, 269 Mont. 83, 91, 887 P.2d 222, 227 (1994). We exercise de novo review to determine whether the court correctly interpreted and applied the relevant statutes. *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662. We will not disturb the findings supporting a district court's determination unless they are clearly erroneous. *In re Guardianship & Conservatorship of Gilroy*, 2004 MT 267, ¶ 16, 323 Mont. 149, 99 P.3d 205.

---

[1] Under § 72-5-101(1), MCA, "'Incapacitated person' means any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause, except minority, to the extent that the person lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the person or which cause has so impaired the person's judgment that the person is incapable of realizing and making a rational decision with respect to the person's need for treatment."

4

**DISCUSSION**

¶10 *Did the District Court err in appointing Lloyd, rather than Robert, as full guardian for M.D.?*

¶11 In this case, the parties do not challenge the District Court's finding that M.D. is an incapacitated person. We will therefore limit our review to whether the court abused its discretion and acted in accordance with § 72-5-312, MCA, in appointing Lloyd, rather than Robert, as full guardian.

¶12 Under § 72-5-312(1), MCA, "Any competent person . . . may be appointed guardian of an incapacitated person." However, a person is ineligible to serve as guardian if the person:

> (a) provides or is likely to provide during the guardianship substantial services to the incapacitated person in the professional or business capacity other than in the capacity of guardian;
> (b) is or is likely to become during the guardianship period a creditor of the incapacitated person, other than in the capacity of guardian; [or]
> (c) has or is likely to have during the guardianship period interests that may conflict with those of the incapacitated person . . . .

Section 72-5-312(4)(a)-(c), MCA. When interpreting a statute, "we seek to implement the objectives the Legislature sought to achieve, and if the legislative intent can be determined from the plain language of the statute, the plain language controls."[2]

---

[2] We also note that, in this case, the District Court interpreted § 72-5-312(4), MCA, in part by relying on the Commissioners' Comments accompanying the Uniform Probate Code (UPC). In the past, this Court has also relied on the UPC comments when interpreting statutes based on that code. *See In re Estate of Lettengarver*, 249 Mont. 92, 99, 813 P.2d 468, 473 (1991). Montana adopted the UPC in 1974, including the provisions currently contained in § 72-5-312, MCA, that delineate who may be appointed guardian of an incapacitated person. Section 91A-5-311, MCA (1974). However, subsection (4) of the statute is not the progeny of the UPC; rather, the Montana Legislature adopted the subsection in 1981. *See* Unif. Probate Code § 5-311 (1977); 1981 Mont. Laws 550 (codified at § 72-5-312, MCA (1981)). As such, the UPC comments do not provide a basis to interpret the language of § 72-5-312(4)(a)-(c), MCA.

*Montanans v. State*, 2006 MT 277, ¶ 60, 334 Mont. 237, 146 P.3d 759 (citing *City of Billings v. Gonzales*, 2006 MT 24, ¶ 8, 331 Mont. 71, 128 P.3d 1014).

**Subsection (a): Whether the District Court erred in finding that Lloyd does not provide and is not likely to provide substantial services to M.D. in a business capacity outside of his guardianship capacity**

¶13 Robert first argues that the District Court acted in contravention of § 72-5-312(4)(a), MCA, and erred in appointing Lloyd as M.D.'s guardian because he provides or is likely to provide substantial services to M.D. due to his business interest in, and management of, the family farm. As evidence, Robert points to Lloyd's cash lease on part of the farm's tillable acres, his husbandry of M.D.'s cattle, and the farm loan Lloyd co-signed with M.D. and Kenneth. Lloyd argues that he has undertaken these actions for the benefit of the family farm, not to profit from, or provide substantial services to, M.D.

¶14 Our case law has not interpreted the "substantial services" provision contained in § 72-5-312(4)(a), MCA. Thus, Robert's challenge to the District Court's order raises a matter of first impression before this Court. None of the terms contained in § 72-5-312(4)(a), MCA, are defined in Title 72, chapter 5, MCA, or in any other title of the Montana Code Annotated. However, we have previously held that, under a plain language interpretation of § 72-5-312(4), MCA, "[s]ubsection 4 anticipates potential conflicts of interest between identified guardian types and the incapacitated person, thereby prohibiting appointments of such guardians." *In re Co-Guardianship of D.A.*, 2004 MT 302, ¶ 19, 323 Mont. 442, 100 P.3d 650. The aim of the statute is to protect an incapacitated person from commercial relationships that can cause harm to the person.

6

Accordingly, we extend our plain language interpretation to the provision in question and hold that § 72-5-312(4)(a), MCA, requires a court to disqualify a person engaged in a business or professional relationship with an incapacitated person when that relationship is likely to harm the interests of the incapacitated person.

¶15     In this case, the District Court found that § 72-5-312(4)(a), MCA, only applies to nursing homes or health care providers who are taking care of incapacitated persons for a fee.[3]  While we will not interpret the statute so narrowly, we also decline to interpret the statute so broadly as to disqualify a family member from serving as a guardian just because both have an interest in a family business.  We recognize that business and familial relationships inherently become inextricably intertwined when family members engage in a business together.  Indeed, in the case of generational ranching and farming families, it would be a rare case if no business was conducted among family members. The fact that they do should not preemptively prohibit them from serving as guardians for one another and we conclude that the statute does not have this effect.  If we were to automatically disqualify a family member from serving as a guardian solely on this basis, it could harm both family businesses and those persons deemed incapacitated, and in need of a guardian, in Montana.  In many cases, a court would be forced to disqualify family members who know the most about an incapacitated person's finances, assets, and personal needs.

---

[3] We note that the District Court relied on the Commissioners' Comments accompanying the UPC to come to this conclusion.  However, as we explained in footnote 2, the UPC comments do not provide a basis to interpret § 72-5-312(4), MCA.

¶16     Upon review, we conclude that the District Court did not err in determining that Lloyd is not providing, nor is he likely to provide, substantial services to M.D. in a business capacity.  First, there is no evidence to suggest that Lloyd's management of the family farm presents a conflict of interest with respect to M.D.; rather, the steps Lloyd has taken to manage the family farm serves to benefit M.D.  Second, even if a potential conflict exists by way of Lloyd's management and interests in the family farm, we cannot say on the record before us that such a conflict is or is likely to be substantial.  However, if future developments create such a conflict between Lloyd and M.D. because Lloyd begins to manage the family farm to advance his own interests to the detriment of M.D.'s interests, then a reevaluation of Lloyd's continued eligibility as guardian may be required under those circumstances.  Finally, while we acknowledge, as noted above, the District Court's erroneous legal analysis in this case, we also "will not reverse a district court that reaches the correct result, even if for the wrong reason."  *Pumphrey v. Empire Lath & Plaster*, 2006 MT 99, ¶ 37, 332 Mont. 116, 135 P.3d 797.

**Subsection (b):  Whether the District Court erred in finding that Lloyd is not and is not likely to become a creditor of M.D. outside of his guardianship capacity**

¶17     Robert next argues that Lloyd is or is likely to become a creditor of M.D., and is thus ineligible to serve as M.D.'s guardian under § 72-5-312(4)(b), MCA, because he:  1) co-signed a loan with M.D. to refinance the farm's debt; 2) pays for M.D.'s nursing home care out of his own personal banking account; and 3) has invested personal funds in the farm.  Lloyd argues that because M.D. does not owe him any money, and will never

8

borrow money from him given the advanced state of her disease, he is not and will not become a creditor of M.D.

¶18 While the term "creditor" is not defined in Title 72 of the Montana Code Annotated, the term as used in this section of the code can be ascertained by looking to other sections of the code. *See* § 1-2-107, MCA ("Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."). Under § 31-2-102, MCA, a creditor is defined as "a person in whose favor an obligation exists, by reason of which the person is or may become entitled to the payment of money." Again, in addition to considering whether a creditor-debtor relationship exists or is likely to develop between a guardian and an incapacitated person, we must also consider whether this relationship presents a conflict of interest that precludes a guardian from acting in the incapacitated person's best interest.

¶19 Here, we conclude that the District Court did not err when it determined that § 72-5-312(4)(b), MCA, did not disqualify Lloyd from serving as M.D.'s guardian. Robert presented no evidence to support his contention that M.D. owes or will owe Lloyd any money. There is no agreement between Lloyd and M.D. which requires Lloyd to be reimbursed for his investment in the farm or his payments towards his mother's care. Indeed, if anything, M.D. may become a creditor of Lloyd if he fails to make payments on the annual cash lease on the farm. And, if he defaults on his lease payments, *both* M.D. and Lloyd's interests would suffer because the income used to pay the farm loan would disappear and the loan would go into default. Based on the evidence presented to

9

the District Court, we conclude that the court did not err in determining that Lloyd is not likely to become a creditor of M.D.

**Subsection (c):  Whether the District Court erred in finding that Lloyd has not and is not likely to have interests that conflict with M.D.'s interests**

¶20     Robert also argues that Lloyd has or is likely to have interests that may conflict with M.D.  In addition to reiterating many of same points already addressed above, he generally maintains that Lloyd's interest in maintaining the family farm presents a conflict of interest that precludes him from acting as M.D.'s guardian.  Lloyd argues that his interests are not in conflict, but rather are aligned, with M.D.'s interests and that Robert's claim that a conflict may arise is speculative and unpersuasive.

¶21     Section 72-5-312(4)(c), MCA, is a catch-all provision which contemplates other types of conflicts that would preclude a person from serving as a guardian of an incapacitated person.  *See In re Guardianship of Nelson*, 204 Mont. 90, 95-96, 663 P.2d 316, 318-19 (1983).  As such, because we have already addressed many of the arguments Robert reiterates here, we will only address his general claim that Lloyd's "interests as a farmer and his desire to continue with the family farm" present a conflict of interest that disqualifies him from serving as M.D.'s guardian.  Upon review, we agree with the District Court's determination that § 72-5-312(4)(c), MCA, does not apply in this case.  By maintaining and working the family farm, Lloyd's investment of time and money into the family business serves M.D.'s interests and does not conflict with them.

¶22     Finally, Robert contends that the District Court abused its discretion in not appointing him as guardian because M.D.'s interests are best served by placing her in a

nursing home in Mandan, North Dakota, which would provide her with the care she needs. Lloyd, on the other hand, argues that he is the best person to serve as M.D.'s guardian, based on his prior role as her caregiver. He also argues that Robert's plan to place M.D. in a nursing home where she knows no one, without expert testimony supporting his claim, is not in M.D.'s best interest.

¶23 Here, pursuant to § 72-5-312, MCA, the District Court considered the testimony and exhibits offered into evidence and exercised its broad discretion to determine that Lloyd was the best qualified to serve as M.D.'s guardian. We find no abuse of discretion in the court's determination. Therefore, we affirm the District Court's appointment of Lloyd as full guardian for M.D.

## CONCLUSION

¶24 For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

11