No. 98-726

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 154

295 Mont. 89

983 P.2d 339

IN THE MATTER OF THE ESTATE

OF SHIRLEY L. BAYERS,

A Protected Person.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Russell C. Fagg, Judge Presiding.

No

COUNSEL OF RECORD:

For Appellant:

Philip P. McGimpsey, Philip P. McGimpsey, Inc., Billings, Montana

For Respondents:

John T. Jones and Nancy Bennett, Moulton, Bellingham, Longo &

Mather, P.C., Billings, Montana

William J. Mattix, Crowley Law Firm, Billings, Montana

Damon L. Gannett, Gannett Law Firm, Billings, Montana

Submitted on Briefs: April 29, 1999

Decided: July 1, 1999

Filed:

No

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. This is an appeal from the order of the Thirteenth Judicial District Court, Yellowstone County, granting the conservator's motion for payment of attorney's fees incurred by the permanent guardian. We affirm.**

**¶2. The sole issue presented in this case is whether the District Court erred in allowing the conservator of Shirley Bayers' estate to pay the attorney's fees incurred by Shirley's permanent legal guardian in seeking the appointment of a guardian for Shirley.**

BACKGROUND

**¶3. In April 1995, Shirley executed a durable power of attorney appointing her daughter, Diane Vickman, as her attorney-in-fact. Shirley's granddaughter, Tracy Crabtree, was appointed as Shirley's alternate attorney-in-fact in the event that Diane became unable to perform her duties under the power of attorney. In June 1995, Shirley was diagnosed with Alzheimer's Disease. In July 1995, Shirley inherited a sizeable estate from her half-sister, Melba Meyers. Diane died in September 1995, and Tracy became Shirley's attorney-in-fact under the terms of the durable power of attorney.**

**¶4. In October 1995, Tracy retained the Crowley law firm to initiate proceedings for the appointment of a legal guardian and conservator for Shirley. In addition to the appointment of a legal guardian and conservator, the petition also sought appointment of Dr. Patricia Coon, M.D., as Shirley's physician, attorney Damon L. Gannett as Shirley's guardian *ad litem*, and social worker Wayne L. Smithberg as Shirley's visitor pursuant to the provisions of § 72-5-315(3), MCA. The petition**

initially named Tracy as the candidate for guardian and conservator but was later amended to nominate Shirley's only living daughter, Judy Trenka, as the guardian candidate, and Judy and First Interstate Bank as the co-conservators of Shirley's estate.

¶5. The District Court ordered the appointment of a physician, a guardian *ad litem,* and a visitor for Shirley, then scheduled a hearing on the appointment of a guardian and conservator. Prior to the hearing, the District Court appointed Judy as Shirley's temporary full guardian due to Shirley's Alzheimer's diagnosis and the need for her immediate care and protection.

¶6. On November 17, 1997, Shirley married James Bennett. On November 21, 1997, Shirley and James retained attorney Philip McGimpsey to act as Shirley's personal counsel and represent her in the guardianship proceedings.

¶7. After the hearing on the appointment of a guardian, in an order dated December 14, 1995, the District Court appointed the Department of Public Health and Human Services (DPHHS) as Shirley's interim guardian and First Interstate Bank as conservator of Shirley's estate. Under the District Court's order, the interim guardianship was originally dated to expire on March 14, 1996; however, this date was later extended through March 1997.

¶8. In March 1997, just before the interim guardianship expired, Judy renewed the petition seeking her appointment as Shirley's sole permanent guardian. Shirley's husband, James, filed a competing petition seeking his appointment as Shirley's permanent guardian. In April 1997, the District Court held a hearing on the competing petitions. Appearing at the hearing were the Crowley law firm on behalf of Judy as the guardian candidate; attorney Roy Johnson on behalf of James as the guardian candidate; and attorney John Jones on behalf of the conservator, First Interstate Bank. Also appearing at the hearing were Damon Gannett as Shirley's court-appointed guardian *ad litem* and Philip McGimpsey as Shirley's personally retained attorney.

¶9. In June 1997, the District Court issued an order appointing Judy as Shirley's full permanent guardian. In March 1998, the Crowley firm submitted a request to the conservator of Shirley's estate for payment of approximately $30,000 in legal fees incurred by Judy in seeking appointment as guardian. McGimpsey objected to the

Crowley firm's request for payment of fees out of the conservatorship estate, and First Interstate Bank filed a motion before the District Court seeking authorization to pay the fees. The District Court held a hearing on the conservator's motion on June 23, 1998, and granted the motion to allow payment. McGimpsey filed this appeal on Shirley's behalf appealing the payment of the Crowley firm's fees out of funds in the conservatorship estate.

## DISCUSSION

¶10. Did the District Court err in allowing the conservator of Shirley Bayers' estate to pay the attorney's fees incurred by Shirley's permanent legal guardian in seeking the appointment of a guardian for Shirley?

¶11. We review a district court's findings of fact to determine whether those findings are clearly erroneous. *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We review a district court's conclusions of law to determine whether those conclusions are correct. *DeSaye*, 250 Mont. at 323, 820 P.2d at 1287.

¶12. The appointment of a guardian for an incapacitated person is a matter largely within the discretion of the appointing court, and this Court will not interfere with the actions of that court absent an abuse of discretion. *In the Matter of the Guardianship of Nelson* (1983), 204 Mont. 90, 94, 663 P.2d 316, 318. Moreover, the appointing court's discretionary power encompasses approval of attorney's fees incurred by a guardian within the scope of the guardianship. *In re Allard Guardianship* (1914), 49 Mont. 219, 229, 141 P. 661, 665.

¶13. Appellant advances several arguments as to why the legal fees requested by the Crowley law firm should not be paid by the conservator. In particular, appellant argues that the award of a guardian's attorney's fees is contrary to the general rule that attorney's fees are not awarded to the prevailing party in an adversarial proceeding; that it was Tracy and Judy, not Shirley, who contracted for the legal services of the Crowley law firm, and that therefore Tracy and Judy, not the conservatorship estate, should be primarily responsible for the fees for those services; that neither of the petitions for guardianship prepared and filed by the Crowley firm contained a request for attorney's fees; that the power of attorney authorizing Tracy to act as Shirley's attorney-in-fact was not subject to due process; and finally, that the attorney's fees awarded in this case were not reasonable. We

address each of these arguments in turn.

¶14. **Appellant cites several cases propounding the general rule that attorney's fees are not awarded to the prevailing party in an adversarial proceeding, absent special contractual or statutory provisions to the contrary.** Appellant's reliance upon these cases, however, is misplaced, because a petition to appoint a guardian is not an adversarial proceeding, but rather a proceeding to promote the best interests of the person for whom guardianship is sought. *See* § 72-5-306, MCA ("Guardianship for an incapacitated person may be used only as is necessary to promote and protect the well-being of the person").

¶15. **Courts from sister jurisdictions have reached similar conclusions based upon comparable statutes.** *See Gay v. McCaughan* (Fla. 1958), 105 So.2d 771, 774 ("the court having jurisdiction of a guardianship matter is said to be the superior guardian, while the guardian himself is deemed to be an officer of the court"); *In re McLarty's Estate* (Fla. App. 1982), 421 So.2d 811, 812 (holding that an action to remove the personal representative of an estate is not an adversary proceeding to which the Rules of Civil Procedure are generally applicable); *In re Guardianship of Reynolds* (Ohio App. 1957), 155 N.E.2d 686, 687-88 ("Proceedings for the appointment of guardians, [sic] are not inter partes, or adversary in character. They are properly proceedings in rem and are ordinarily instituted by application made on behalf of the ward, and for his benefit."); *McKinley v. Salter*, 136 S.W.2d 615, 624 (Tex. Civ. App. 1939) ("Proceedings for the appointment of a guardian are not adversary in their nature. A jurisdiction when exercised is exercised to preserve and protect the estate of the ward.").

¶16. **We likewise reject appellant's argument that payment of the guardian's attorney's fees from Shirley's estate was erroneous for the reason that Shirley never personally contracted with the Crowley firm for the filing of a petition for guardianship. As an initial matter, we note that at the time Tracy contracted for the legal services of the Crowley firm, she was acting as Shirley's attorney-in-fact under a durable power of attorney, and that § 72-5-501(1), MCA, provides that "[a]ll acts done by the attorney-in-fact pursuant to a durable power of attorney during any period of incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his successors in interest as if the principal were alive, competent, and not disabled."**

¶17. **However, even if Tracy had not been possessed of the powers of an attorney-in-fact when she retained the services of the Crowley firm, § 72-5-428(1), MCA,**

expressly authorizes the conservator of the estate of an incapacitated person to distribute funds necessary for the support, education, care, or benefit of the protected person. The cost of initiating a good faith petition for the appointment of a guardian where such appointment is determined to be in the best interests of the ward constitutes a necessary expenditure on behalf of the ward and is therefore compensable out of the guardianship estate. *See In re Dunn* (N.C. 1954), 79 S.E.2d 921, 927; *Chavis v. Patton* (Ind. App. 1997), 683 N.E.2d 253, 259-60; *Carney v. Aiklen* (Tex. Civ. App. 1979), 587 S.W.2d 507, 511.

We cannot agree with the objectors that the Probate Court lacked power to authorize the Conservator to Collect to charge the costs of the incompetency proceeding and attorney's fees against the alleged incompetent's estate. Clearly a petition brought in good faith to establish incompetence is an act in the interest and for the benefit of the alleged incompetent. [Citations omitted.] While we find no Illinois cases on the point, we are persuaded by the rule adopted in other states that costs and attorney's fees, incurred in the prosecution and defense of incompetency proceedings, constitute necessaries of the incompetent for the payment of which his estate may be assessed by the court. [Citations omitted.]

*In re Sherwood's Estate* (Ill. App. 1965), 206 N.E.2d 304, 306-07.

¶18. Appellant also argues that the fees in this case should be disallowed on the grounds that "the Guardian's March 1998 request to the Conservator for the payment of attorneys' fees was factually, procedurally and statutorily time barred." This argument is based on the fact that the request for fees was not pled in either of the petitions for appointment of a guardian, that Judy testified at the time of her appointment that she would not seek compensation from the conservatorship estate, and that the order appointing Judy permanent guardian did not provide for an award of attorney's fees to Judy.

¶19. We note that appellant's brief is devoid of reference to any legal authority in support of his position that a request for attorney's fees in a petition for guardianship is a prerequisite to payment of those fees out of the estate of the incapacitated person or that the failure of the appointing court to provide for such fees in its order appointing a guardian precludes a request for payment of those fees at a later date. Neither does appellant cite to any legal authority supporting his theory that payment

of the guardian's attorney's fees constitutes a form of "compensation" for the services of the guardian. Under Rule 23, M.R.App.P., it is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position. *Johansen v. State, Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24.

¶20. We nevertheless address appellant's argument to the limited extent of pointing out that Rule 54(c), M.R.Civ.P., specifically authorizes a district court to grant relief to which a party is entitled, notwithstanding the failure of that party to demand such relief in its pleadings. As discussed above, payment of a guardian's attorney's fees by the conservator of the ward's estate is relief to which the guardian would otherwise be entitled if, as in this case, the court determines that the petition was brought in good faith and the appointment of a guardian was in the best interest of the protected person.

¶21. Appellant also argues that the guardian's attorney's fees should not be paid out of Shirley's estate because "[t]he April 21, 1995, Durable Power of Attorney upon which the District Court issued the September 30, 1998 Order was not subjected to even the basic elements of due process." More particularly, appellant argues that the document assigning Shirley's power of attorney to Tracy was never admitted into evidence before the District Court; the District Court received no testimony as to whether Shirley did in fact execute or have capacity to execute that document at the time of its signing; the District Court received no testimony regarding whether Tracy properly and legally succeeded to the duties of attorney-in-fact upon the death of Diane Vickman; and the District Court received no evidence showing that Tracy was legally empowered to retain the Crowley law firm for the purpose of initiating guardianship proceedings.

¶22. For purposes of clarity, we note that the arguments advanced by appellant are not properly characterized as issues involving due process of law. "Due process is defined as the constitutional guaranty that no one shall be arbitrarily deprived of her life, liberty or property. The essence of substantive due process is that the State cannot use its police power to take unreasonable, arbitrary or capricious action against an individual." *Matter of C.H.* (1984), 210 Mont. 184, 193, 683 P.2d 931, 936. Appellant has not asserted any involvement whatsoever on the part of the State with regard to either the execution of the April 20, 1995 power of attorney or the exercise of the rights and duties arising thereunder which would implicate the operation of

the due process clauses.

¶23. What appellant essentially argues in the remainder of his contentions regarding the power of attorney is that in ordering that the guardian's legal fees be paid out of Shirley's conservatorship estate, the District Court erroneously relied upon the legal effect of a document not properly in evidence and for which no proper foundation had been laid establishing its authenticity or validity. With regard to whether the power of attorney was properly submitted for consideration by the District Court, Rule 10(c), M.R.Civ.P., expressly states: "A copy of a written instrument which is an exhibit to a pleading is a part thereof for all purposes." Additionally, Rule 7(b)(2), M.R.Civ.P., states that: "The rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules."

¶24. The record reveals that a copy of Shirley's April 20, 1995 power of attorney was filed with the District Court as an attachment to Judy's post-hearing memorandum in support of payment of the Crowley firm's fees. Moreover, the submission of this document as an exhibit to Judy's memorandum to the court was not objected to by any of the parties to the hearing.

¶25. Although appellant asserted in his post-hearing brief to the District Court that "[t]here is simply no judicially established fact, specific statute or principles of common law that supports an application of the April 1995 Durable Power of Attorney to this situation," this objection addressed only the substantive operation of the instrument, and not the evidentiary question of whether there was sufficient foundation for the introduction of the document, as appellant now asserts on appeal.

¶26. In order to preserve an objection to the admission of evidence for purposes of appeal, the objecting party must make a timely objection and state specific grounds for the objection. Rule 103(a)(1), M.R.Evid. An objection to the introduction of evidence is sufficiently specific if it is accompanied by a reasonably definite statement of the grounds for the objection. *Kizer v. Semitool, Inc.* (1991), 251 Mont. 199, 207, 824 P.2d 229, 223. Because the issue of the lack of foundation for the introduction of the April 20, 1995 power of attorney into evidence was not properly preserved for appeal through the assertion of a timely and specific objection before the District Court, we decline to the address the issue further.

¶27. Appellant's final argument on appeal is that the record does not support the

finding that the fees paid to the Crowley firm were reasonable. We disagree.

¶28. The record reveals that counsel for the conservator testified at the hearing that he had reviewed the fees requested and, after deducting certain amounts for duplicative work, believed the fees to be reasonable. Based on this testimony and its own assessment of the billing statement generated by the Crowley firm, the District Court found the amounts requested both reasonable and necessary for the benefit of the protected person. Under these circumstances, appellant's argument that the allowance of the attorney's fees was not based on competent evidence is without merit.

¶29. Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER