No. 03-570

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 302

IN RE THE MATTER OF CO-GUARDIANSHIP
OF D.A., JR.,

An incapacitated person.

APPEAL FROM:     District Court of the Second Judicial District,
                 In and for the County of Silver Bow, Cause No. DG 2003-18,
                 The Honorable Kurt D. Krueger, Judge presiding.

COUNSEL OF RECORD:

          For Appellant:

                 Tony C. Koenig, Michelle J. Maltese, Special Assistant Attorneys General,
                 Montana Department of Public Health and Human Services, Helena,
                 Montana

          For Respondent:

                 Mary Kay Starin, Mary Kay Starin, P.C., Butte, Montana

                 David J. Wing, Attorney at Law, Butte, Montana

                                    Submitted on Briefs: February 17, 2004

                                            Decided:  October 27, 2004

Filed:

          _____
                            Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 D.A., Sr. (DAS), filed a petition in the Second Judicial District Court, Silver Bow County, for appointment of temporary full co-guardianship of D.A., Jr. (DAJ). After an emergency hearing, the court appointed DAS and a designee of the Montana Department of Public Health and Human Services (DPHHS) as temporary full co-guardians of DAJ. The State appeals. We affirm.

¶2 We address the following issues on appeal:

¶3 1. Whether an agency of the state or federal government may be appointed guardian of an incapacitated person pursuant to § 72-5-312(5), MCA, without consent, or over the objection, of that agency.

¶4 2. Whether a state agency may be appointed guardian of an incapacitated person pursuant to § 72-5-312(5), MCA, when there is a qualified person willing and able to serve as guardian and there is no showing that the state agency is required to provide services to persons suffering from the type of disability from which the alleged incapacitated person suffers.

¶5 3. Whether the District Court may appoint a guardian for an alleged incapacitated person without following the procedures required by Title 72, Chapter 5, part 3, MCA.

BACKGROUND

¶6 At the age of six, DAJ came into DPHHS's custody and care due to severe abuse and neglect by his birth mother. The State terminated both DAJ's mother's and father's parental rights and granted DPHHS permanent legal custody of DAJ when he was seven years old. DAJ's mother contacted him infrequently and his father, DAS, began to establish limited

2

contact with him after he was thirteen years old.

¶7     In anticipation of DAJ reaching majority, DPHHS prepared a transition plan whereby DAJ would reside with DAS in Minnesota after being released from Coastal Harbor Treatment Center, a residential treatment facility in Savannah, Georgia. Both his guardian ad litem, Mary Kay Starin (Starin), and DAS expressed concern over DAJ's ability to function in society due to his mental illness, special needs and danger to himself and others. Yet the plan failed to address how DAJ would receive the care he needed such as his medications, therapy or counseling for transition into society.

¶8     On March 17, 2003, Starin requested a hearing in preparation of DAJ reaching majority. She asserted that DPHHS stood in loco parentis to DAJ and recommended that, due to DAJ's maladaptive behaviors and potential danger to himself and others, DPHHS begin to put a guardianship into place at DAJ's eighteenth birthday so he could be placed in an appropriate therapeutic environment which would keep DAJ safe and provide the treatment needed for his ongoing mental illness.

¶9     The court held an involuntary commitment hearing on June 30, 2003, and after testimony, it determined that the circumstances did not require such commitment. The following day, DAS filed a petition for appointment of temporary full co-guardianship of an incapacitated person due to DAJ's mental, emotional and inability to care for himself. The same day, the court held an emergency hearing to address DAS's petition.

¶10    Both DAS and DPHHS presented testimony regarding DAS's qualifications as DAJ's guardian, including his ability to meet DAJ's needs, and DPHHS's participation in DAJ's transition into society. After hearing testimony, the court determined, over DPHHS's

3

objection, that DAJ required continuing care and supervision of temporary full co-guardians and designated DAS and a representative from DPHHS as such guardians pursuant to § 72-5-317, MCA. The court found that the requirements of § 72-5-317, MCA, to appoint temporary full co-guardians were met; that DAJ needed court protection as well as continuing care and supervision; that DPHHS failed to provide a satisfactory transition plan for DAJ thereby creating an emergency necessitating the court's protective powers; that DAS is an appropriate person to assist DAJ, however, he lacked certain qualifications, therefore the court created a co-guardianship whereby both DAS and DPHHS would act as guardians of DAJ's best interests; that the co-guardians would work together to ensure that DAJ received the medications he required; and that DPHHS would provide some financial assistance so DAS would be able to adequately care for DAJ. It is from this order that DPHHS appeals.

## STANDARD OF REVIEW

¶11    We review a district court's conclusions of law related to the appointment of a guardian to determine if they are correct. *In re Guardianship of D.T.N.* (1996), 275 Mont. 480, 483, 914 P.2d 579, 580. Subject to statutory restrictions, selection of a person to be appointed guardian is a matter committed largely to the discretion of the appointing court, and an appellate court will interfere with exercise of this discretion only in case of clear abuse. *Matter of Estate of Bayers*, 1999 MT 154, ¶ 12, 295 Mont. 89, ¶ 12, 983 P.2d 339, ¶ 12.

## DISCUSSION

## ISSUE ONE

4

¶12 Whether an agency of the state or federal government may be appointed guardian of an incapacitated person pursuant to § 72-5-312(5), MCA, without consent, or over the objection, of that agency.

¶13 Section 72-5-306, MCA, dictates that designation of guardianship of an incapacitated person may only be used as necessary to enhance the well-being of a person and must be designed to promote as much independence and self-reliance as possible in the best interest of the ward. *See Estate of West* (1994), 269 Mont. 83, 90, 887 P.2d 222, 226. We have said that a guardian appointment, subject to statutory restriction, is largely within the district court's discretion and we will not disturb such appointment absent an abuse of discretion. *Bayers*, ¶ 12. Section 72-5-312, MCA, identifies the persons/entities who are eligible for appointment as guardians of an incapacitated person, in order of priority, and states the following:

> (1) Any competent person or a suitable institution, association, or nonprofit corporation or any of its members may be appointed guardian of an incapacitated person.
> (2) Persons who are not disqualified have priority for appointment as guardian in the following order:
>     (a) a person, association, or private, nonprofit corporation nominated by the incapacitated person, if the court specifically finds that at the time of the nomination the incapacitated person had the capacity to make a reasonably intelligent choice;
>     (b) the spouse of the incapacitated person;
>     (c) an adult child of the incapacitated person;
>     (d) a parent of the incapacitated person, including a person nominated by will or other writing signed by a deceased parent;
>     (e) any relative of the incapacitated person with whom he has resided for more than 6 months prior to the filing of the petition;
>     (f) a relative or friend who has demonstrated a sincere, longstanding interest in the welfare of the incapacitated person;
>     (g) a private association or nonprofit corporation with a guardianship program for incapacitated persons, a member of such private association or

5

nonprofit corporation approved by the association or corporation to act as a guardian for the incapacitated person, or a person included on an official list of such association or organization as willing and suitable to act as guardian of incapacitated persons;

(h) a person nominated by the person who is caring for him or paying benefits to him.

(3) The priorities established in subsection (2) are not binding, and the court shall select the person, association, or nonprofit corporation that is best qualified and willing to serve.

(4) Except as provided in subsection (5), the court may not appoint a person, institution, association, or nonprofit corporation to be the guardian of an incapacitated person if the person, institution, association, or nonprofit corporation:

(a) provides or is likely to provide during the guardianship substantial services to the incapacitated person in the professional or business capacity other than in the capacity of guardian;

(b) is or is likely to become during the guardianship period a creditor of the incapacitated person, other than in the capacity of guardian;

(c) has or is likely to have during the guardianship period interests that may conflict with those of the incapacitated person; or

(d) is employed by a person, institution, association, or nonprofit corporation who or which would be disqualified under subsections (4)(a) through (4)(c).

(5) If the court determines that there is no qualified person willing and able to serve as guardian, the court may appoint an agency of the state or federal government that is authorized or required by statute to provide services to the person or to persons suffering from the kind of disability from which the incapacitated person is suffering or a designee of the agency, notwithstanding the provisions of subsection (4). Whenever an agency is appointed guardian, the court may also appoint a limited guardian to represent a specified interest of the incapacitated person. Whenever a limited guardian is appointed pursuant to this subsection, the specified interest of the incapacitated person is the sole responsibility of the limited guardian and is removed from the responsibility of the agency.

¶14    When we interpret a statute, this Court's purpose is to implement the objectives the legislature sought to achieve. *Western Energy Co. v. State, Dept. of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, ¶ 11, 990 P.2d 767, ¶ 11. If the intent of the legislature can be determined from the plain language of the statute, the plain language controls and we may

6

go no further nor apply other means of interpretation. *Western Energy Co.*, ¶ 11. Furthermore, this Court is required to simply ascertain and declare what is in terms or in substance contained in the statute, neither inserting what has been omitted nor omitting what has been inserted. *Wild v. Fregein Constr.*, 2003 MT 115, ¶ 20, 315 Mont. 425, ¶ 20, 68 P.3d 855, ¶ 20.

¶15 At the outset, DPHHS urges this Court to consider rules of statutory construction and contends that considering § 72-5-312, MCA, as a whole does not give authority to a district court to appoint a state or federal agency as guardian nor can the court insert language into the statute to create such authority. DPHHS maintains that the appointee must consent to such appointments and illustrates this point by referring to §§ 72-5-312(5), -312(1) and -410, MCA, permissive clauses which indicate when a district court may appoint a guardian. It also refers to §§ 72-5-301 and -406, MCA, as statutory support for the proposition that the appointed person or entity must *accept* the appointment.

¶16 Furthermore, whereby the statute, § 72-5-312(5), MCA, refers to appointment of a state or federal agency, DPHHS asserts that because Montana courts have no authority to require a federal agency to serve as a guardian, the legislature could not have meant that the courts have authority to compel state agencies to serve as guardians. Finally, DPHHS asserts that subsection (5), when read as a whole, is merely an exception to the conflict of interest prohibition in subsection (4), as supported by the fact that this subsection was not part of the original language adopted by the legislature, but part of amendments added in 1981.

¶17 Conversely, DAJ's guardian ad litem, Starin, contends that the only condition precedent for the court to appoint a state agency as guardian pursuant to § 72-5-312, MCA,

7

is a fact-finding determination that there is no qualified person willing and able to serve as guardian. After such determination, as is made here, Starin asserts the court has authority to appoint an agency that is authorized or required by statute to provide services to persons suffering from the type of disability DAJ suffers. She cites to numerous statutes that identify DPHHS's authority and requirement to provide services for incapacitated persons like DAJ.

¶18 Additionally, Starin rebuts DPHHS's contention that it needed to "consent" to the appointment of guardianship by arguing that such an interpretation would be inserting language that the legislature did not include in the statute. She maintains that the District Court did not abuse its discretion when it appointed DAS and DPHHS as temporary full co-guardians of DAJ. We agree.

¶19 A clear interpretation of § 72-5-312, MCA, can be gleaned from the plain language of the statute, therefore we limit our inquiry to its plain meaning. Subsection (1) clearly indicates that persons and entities may serve as guardians for incapacitated persons. Subsection (2) goes on to identify the order of priority a district court may appoint eligible guardians, however, subsection (3) permits the court to deviate from the priority schedule in order to ensure the guardian appointed is the best qualified and willing to serve. Subsection (4) anticipates potential conflicts of interest between identified guardian types and the incapacitated person, thereby prohibiting appointments of such guardians. Subsection (5) provides a district court the power to appoint as guardian a state or federal agency authorized or required by statute to provide services to a person suffering from a disability when there is no qualified person to serve as a guardian regardless of the conflicts of interest identified in subsection (4).

8

¶20    We conclude that subsection (5) does not subordinate or modify subsection (4), but rather they are independent of each other. Subsection (4) addresses situations where there might be a conflict of interest between a ward's best interest and the interest of the guardian, whereas, subsection (5) provides the court with power to appoint when no one person is qualified to serve as a guardian. These are two distinct considerations. DPHHS would like for this Court to interpret this statute as requiring consent, however, the plain language of the statute does not state consent is required and if we were to accept this asserted interpretation, we would violate a primary rule of construction: inserting what has been omitted or omitting what has been inserted.

¶21    Here, the District Court considered the evidence and testimony before it during the emergency hearing for guardian appointment. It exercised its broad discretion to determine that DAS, the willing person, was not qualified to serve as DAJ's guardian. Therefore, within its discretion and pursuant to § 72-5-312(5), MCA, it correctly appointed DPHHS to serve as a co-guardian to DAJ. We affirm the District Court's appointment of DPHHS as temporary full co-guardian to DAJ absent DPHHS's consent.

ISSUE TWO

¶22    Whether a state agency may be appointed guardian of an incapacitated person pursuant to § 72-5-312(5), MCA, when there is a qualified person willing and able to serve as guardian and there is no showing that the state agency is required to provide services to persons suffering from the type of disability from which the alleged incapacitated person suffers.

¶23    DPHHS contends the District Court erred when it appointed DPHHS as guardian

9

when there was another "qualified person willing and able to serve," specifically DAS, as DAJ's guardian. Furthermore, DPHHS asserts it is not authorized or required by statute to serve as DAJ's guardian and the court made no such finding. Finally, it alleges the court erred because it never identified DAJ's disability. Therefore, it maintains that such omissions preclude the District Court from appointing DPHHS to serve as DAJ's guardian.

¶24 DAJ's guardian ad litem, Starin, counters by stating that due to DPHHS's position of loco parentis of DAJ, it was best qualified to serve as a successor guardian and set up an aftercare and transition plan for DAJ once he reached majority. She also points out that while DAS had some ability to act as guardian for DAJ, he was not qualified to do so on his own. When DPHHS failed to provide an appropriate transition plan for DAJ and DAS petitioned the court for appointment of a guardian for DAJ, Starin asserts the court had the discretion to appoint DPHHS and DAS as temporary full co-guardians.

¶25 The District Court has wide discretion appointing guardians, therefore we defer to its decisions absent an abuse of discretion. Here, the record indicates that while DAS was willing and able to act as DAJ's guardian, he did not possess all of the skills or resources required to care for DAJ. The court took judicial notice of the proceedings of the commitment hearing held the day before the emergency guardian hearing. During the commitment hearing, DAJ's guardian ad litem, Starin, and DAJ's attorney, David Wing, presented evidence of DAJ's residential history while in custody of the State of Montana, DAJ's extent of mental incapacity as understood by DPHHS from reports of his treatment centers and DAS's unfamiliarity with the mental health issues and related programs in which DAJ needed. The petition for commitment provides documentation regarding the extent of

10

DAJ's mental disorders such as letters from his social worker, Brooke Palmer, to the County Attorney's Office; DAJ's mental health evaluation by Daniel Nagelberg, Ph.D, a licensed clinical psychologist at the Coastal Harbor Treatment Center; and reports from the Oaks Treatment Center. DPHHS, as loco parentis and as a department that provides services to persons suffering from DAJ's mental incapacities pursuant to § 52-1-103(11) and (13), MCA, has the expertise to provide assistance to DAS in order to care for DAJ. We are unpersuaded by DPHHS's arguments to the contrary. Therefore, we conclude that the District Court did not abuse its discretion in appointing DPHHS and DAS as co-guardians to DAJ. We affirm the District Court on this issue.

## ISSUE THREE

¶26    Whether the District Court may appoint a guardian for an alleged incapacitated person without following the procedures required by Title 72, Chapter 5, part 3, MCA.

¶27    Relying upon *Matter of Klos* (1997), 284 Mont. 197, 943 P.2d 1277, DPHHS raises a denial of due process argument on behalf of DAJ, because it maintains the District Court denied DAJ due process when it failed to follow the statutory requirements for a guardianship proceeding. It cites to numerous statutes under Title 72, Chapter 5, part 3, MCA, and identifies how the court failed to follow these statutes such as: (1) the court heard no testimony from physicians regarding DAJ's incapacity in violation of §§ 72-5-315(3) and (4), MCA; (2) the court did not appoint a visitor in violation of § 72-5-315(3), MCA; (3) the court heard no testimony regarding DAJ's disability regarding his lack of sufficient understanding or capacity to communicate responsible decisions concerning his person, or that he was so impaired that he was incapable of realizing and making a rational decision

11

with respect to his need for treatment; and (4) the court heard no testimony regarding DAJ's actual mental or physical limitations. Moreover, DPHHS contends that Montana law does not require it to serve as a guardian for an adult incapacitated person and such requirement directs limited financial and personnel resources away from those it is statutorily required to serve. As such, DPHHS asserts the court erred when it failed to follow statutory requirements and the order should be reversed.

¶28 DAJ's guardian ad litem points out that DPHHS failed to differentiate between statutory procedures as required for appointment of a permanent guardian and temporary guardian. Relying on *Klos*, she asserts the District Court complied with statutory procedure as dictated by § 72-5-317, MCA, Temporary Guardians. Additionally, because DPHHS did not raise this issue at the hearing, she asserts that it is not properly raised on appeal. Furthermore, she contends the District Court carefully protected DAJ's constitutional rights when it appointed both a guardian ad litem and an attorney for DAJ. In support of this position, she identifies that DPHHS's true concern is financial, not the best interest of DAJ, and the legislature recognized this as a concern when it provided for guardian ad litems to look out for the best interest of the child while DPHHS's interests may not be the same. *See* § 41-3-112, MCA. Therefore, she asserts that DPHHS has no standing to raise a constitutional argument on DAJ's behalf. We agree.

¶29 We said in *Klos* that temporary guardianship proceedings are distinct from permanent guardianship proceedings. *Klos*, 284 Mont. at 201, 943 P.2d at 1279. Since DAS petitioned for appointment of temporary full co-guardianship of DAJ, the District Court was procedurally bound by § 72-5-317, MCA. In order to comply with the statutory procedure,

12

a district court must issue a written order; delineate the status of guardianship, either full or limited; and define the scope of powers a guardian may exercise. *See Klos*, 284 Mont. at 204, 943 P.2d at 1281. Here, the District Court clearly complied with the requisite procedure, therefore, we conclude that it did not abuse its discretion when it ordered the appointment of both DAS and DPHHS as temporary full co-guardians. We affirm the District Court's Order on this issue.

/S/ JIM REGNIER

We Concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶30   I dissent. The Court has erred in its statutory interpretation by overlooking the determinative statutes which control the exercise of personal jurisdiction over the guardian.

¶31   The Court holds that "the plain language of the statute does not state [the Department's] consent is required" and that to require consent would violate the rules of statutory construction. *See* ¶ 20. However, the Code specifically requires consent, by acceptance of appointment, in order for jurisdiction to be exercised over the guardian:

> **Consent to jurisdiction by acceptance of appointment.**   (1) By accepting appointment, a guardian submits personally to the jurisdiction of the court in any proceeding relating to the guardianship that may be instituted by any interested person.

Section 72-5-301(1), MCA. Thus, personal jurisdiction over a guardian is obtained by the

guardian's consent to the appointment. That acceptance of appointment is a prerequisite to the exercise of jurisdiction over the guardian is illustrated throughout the guardianship statutes. *See* §§ 72-5-232 and 72-5-323, MCA. Consistent therewith, all of the guardianship appointment statutes, including § 72-5-312(5), MCA, on which the Court relies, provide that appointment of a guardian is permissive ("the court *may appoint . . .*"), and further require that the person appointed must be both *qualified* and *willing*:

> **Procedure for court appointment of guardian of minor–notice–hearing–representation by attorney.** . . . .
> (2) Upon hearing, if the court finds that a qualified person *seeks appointment* . . . it shall make the appointment.

Section 72-5-225(2), MCA (emphasis added). Pursuant hereto, a guardian cannot be appointed unless that party "seeks appointment." A court is not otherwise authorized to make the appointment.

¶32 The Court today simply overrides these statutory provisions and imposes a guardianship upon the Department over its objection. In essence, the Court adds the following provision to the law: "The Department may be appointed guardian without regard to the statutes governing guardian appointments."

¶33 I would reverse the District Court.


/S/ JIM RICE


Chief Justice Karla M. Gray and Justice James C. Nelson concur in the dissent of Justice Rice.

16

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON