In re the ESTATE OF Sarah MORGAN, Respondent–Appellee,

and

El Paso County Department of Human Services, Appellant,

v.

Patricia L. Martin, Appellee.

No. 06CA0200.

Colorado Court of Appeals, Div. IV.

March 8, 2007.

Leo L. Finkelstein, Colorado Springs, Colorado, for Respondent–Appellee.

William H. Louis, County Attorney, Andrew C. Gorgey, Chief Deputy County Attorney, Colorado Springs, Colorado, for Appellant.

Patricia L. Martin, Guardian Ad Litem.

Opinion by Judge BERNARD.

The El Paso County Department of Human Services (DHS) appeals the trial court order appointing it as permanent guardian for the ward, Sarah Morgan. We reverse.

## I. Background

The following facts are undisputed. Morgan is an adult who lives in El Paso County, Colorado. Gerald A. Kimble, Jr., served as Morgan's guardian ad litem in an earlier dependency and neglect action in which Morgan was the subject child in the legal custody of DHS. In October 2004, when Morgan was twenty years old but still under the jurisdiction of the court pursuant to the dependency and neglect action, Kimble petitioned the trial court for appointment of a guardian for her.

According to Kimble, Morgan had been born with fetal alcohol syndrome and had an IQ of 65. She also had been diagnosed with an attachment disorder, oppositional defiant disorder, and a neurological processing disorder.

In December 2004, the court appointed Eva Mesa as emergency guardian for Morgan. In January 2005, the court extended the emergency guardianship, and in February 2005, the court appointed Mesa as permanent guardian for Morgan.

When it became apparent the guardianship was not satisfactory, Kimble requested a status conference with the court. In June 2005, the court suspended the guardianship until a status conference could be held. At a hearing in August 2005, Mesa verified she no longer wished to serve as permanent guardian for Morgan.

The court found it necessary to appoint a permanent guardian for Morgan because her ability to make appropriate decisions concerning her personal safety was impaired; she had difficulty with abstract reasoning, language comprehension, and the arithmetic necessary for managing her finances; and she was likely to be overwhelmed with the tasks of everyday life. The court determined there was no other person with authority or willingness to act as Morgan's guardian. Morgan, through counsel, indicated she did not want DHS to be her guardian. The court appointed DHS as Morgan's permanent guardian on December 14, 2005.

Kimble has since retired from the practice of law, and attorney Patricia L. Martin has been substituted by court order as guardian ad litem for Morgan.

## II. Trial Court's Authority to Appoint Guardian

DHS contends the trial court lacked statutory authority to appoint it as permanent guardian for Morgan. We agree.

■ Statutory interpretation is a question of law we review de novo. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027 (Colo.2006).

■ When interpreting a statute, our task is to give effect to the legislature's intent. *Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n,* 42 P.3d 23 (Colo.2002). We look first to the language of the statute, giving words and phrases their plain and ordinary meaning, and we interpret the statute in a way that best effectuates the purpose of the legislative scheme. *Harding v. Heritage Health Prods. Co.,* 98 P.3d 945 (Colo.App.2004). If the plain language of the statute is clear, we need not employ other tools of statutory interpretation. *Anderson v. Watson,* 953 P.2d 1284 (Colo.1998).

## A. Requirements for Appointment of Guardian

■ To appoint a guardian for an incapacitated person, a court must find, by clear and convincing evidence, the person is incapacitated and the person's needs cannot be met by less restrictive means. Section 15–14–311(1)(a), C.R.S.2006. An "incapacitated person" is defined in § 15–14–102(5), C.R.S.2006, as

an individual other than a minor, who is unable to effectively receive or evaluate information or both or make or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance.

" 'Guardian' means an individual at least twenty-one years of age, resident or non-resident, who has qualified as a guardian of a minor or incapacitated person pursuant to appointment by a parent or by the court. The term includes a limited, emergency, and temporary substitute guardian but not a guardian ad litem." Section 15–14–102(4), C.R.S.2006. "A person becomes a guardian of an incapacitated person upon appointment by the court. The guardianship continues until terminated, without regard to the location of the guardian or ward." Section 15–14–301, C.R.S.2006.

A person becomes a guardian of an incapacitated person through a procedure set forth in §§ 15–14–304 to 15–14–311, C.R.S.2006. In short, a person interested in the welfare of the ward files a petition with the court; the court orders a professional evaluation of the ward; and the court holds a hearing and appoints a guardian, considering a list of priorities.

The guardianship statutes indicate DHS could be appointed as a guardian of an incapacitated person. The priorities for who may be guardian are listed in § 15–14–310(1), C.R.S.2006:

(a) A guardian, other than a temporary or emergency guardian, currently acting for the respondent in this state or elsewhere;

(b) A person nominated as guardian by the respondent, including the respondent's specific nomination of a guardian made in a durable power of attorney;

(c) An agent appointed by the respondent under a medical durable power of attorney pursuant to section 15–14–506;

(d) An agent appointed by the respondent under a general durable power of attorney;

(e) The spouse of the respondent or a person nominated by will or other signed writing of a deceased spouse;

(f) An adult child of the respondent;

(g) A parent of the respondent or an individual nominated by will or other signed writing of a deceased parent; and

(h) An adult with whom the respondent has resided for more than six months immediately before the filing of the petition.

Section 15–14–310(1) states a court "in appointing a guardian shall consider persons otherwise qualified in the following order of priority." Section 15–14–310(3), C.R.S.2006, states a court, "for good cause shown, may decline to appoint a person having priority and appoint a person having a lower priority or no priority." A "person" is defined in § 15–14–102(10), C.R.S.2006, to include, "government, governmental subdivision [or] agency." Thus, a court has the authority to appoint a governmental agency that does not appear on the priority list in § 15–14–310(1)(a) as a guardian.

This conclusion is reinforced by a comment to § 310 of the Uniform Guardianship and Protective Proceedings Act (1982 & 1997). Section 15–14–310 mirrors § 310 of the Act. Because of this similarity, we are guided by the comments to that section in construing its meaning. *See In re Marriage of Hillstrom*, 126 P.3d 315, 320 (Colo.App.2005). The comment to § 310 provides:

A professional guardian, including a public agency or nonprofit corporation, was specifically not given priority for appointment as guardian under this Act as those given priority are limited to individuals with whom the ward has a close relationship. The Committee which drafted the Act recognized the valuable service that a professional guardian, a public agency or nonprofit corporation provides. A professional guardian can still be appointed guardian if no one else with priority is available and willing to serve or if the court, acting in the respondent's best interest, declines to appoint a person having priority.

We conclude Colorado's statutory guardianship scheme contemplates the possibility a court can appoint DHS as a guardian for an incapacitated person. We now turn to the question of whether the scheme provides a basis for forcing DHS to accept such an appointment over its objection.

**B.  Guardian Who Does Not Consent**

■  DHS argues it did not accept its appointment as permanent guardian for Morgan and therefore, the trial court lacked authority to appoint it to be Morgan's guardian. We agree.

DHS relies on § 15–14–110(1), C.R.S.2006, which provides: "A nominee for guardian, emergency guardian, conservator, or special conservator shall file an acceptance of office with the court." DHS also relies on § 15–14–111, C.R.S.2006, which provides: "By accepting appointment, a guardian or conservator submits personally to the jurisdiction of the court in any proceeding relating to the guardianship or conservatorship."

The verb "to accept" means "to receive with consent ... assent to the receipt of." *Webster's Third New International Dictionary* 10 (1976). Here, DHS objected to the appointment, did not consent to it, and, thus, did not accept it.

Guardians of incapacitated persons assume significant duties and powers. Sections 15–14–314, 15–14–315, C.R.S.2006. To order an unwilling person, even a government agency, to assume these obligations without the force of clear and express legislative authorization invites the potential of disserve to the incapacitated person and the prospect of a judicially created, unfunded mandate imposed on the agency.

Here, DHS did not submit to the court's jurisdiction in any proceedings concerning Morgan's guardianship, and the court had no authority to order DHS to become Morgan's guardian over its objection.

In reaching this conclusion, we are aware the Montana Supreme Court reached a different result in *In re Co–Guardianship of D.A.*, 323 Mont. 442, 100 P.3d 650 (2004). However, we are persuaded by the dissent in that case, which makes points about Mon-

tana's statutory guardianship scheme similar to those we make here.

Further, *In re Co–Guardianship of D.A., supra,* is distinguishable. Mont.Code Ann. § 72–5–312 (2005), the equivalent of the list of priorities for guardianship found in § 15–14–310, includes language in subsection (5) upon which the Montana Supreme Court relied heavily:

> If the court determines that there is no qualified person willing and able to serve as guardian, the court may appoint an agency of the state or federal government that is authorized or required by statute to provide services to the person or to persons suffering from the kind of disability from which the incapacitated person is suffering or a designee of the agency....

*In re Co–Guardianship of D.A., supra,* 323 Mont. at 446–47, 100 P.3d at 654.

In Colorado, analogous language appears in two places. Section 15–14–312(1), C.R.S. 2006, allows a court to appoint an emergency guardian, whose authority shall not exceed sixty days, if the court finds (1) compliance with the full procedures contained in § 15–14–301, et seq., will "likely result in substantial harm to the respondent's health, safety, or welfare," and (2) "no other person appears to have authority and willingness to act in the circumstances." This statute does not contain any language indicating a court has the power to require any particular person or agency to be a guardian.

Section 26–3.1–104, C.R.S.2006, provides for protective services for adults who are at risk for being mistreated or "self-neglected." The decision whether to initiate such services or to ask a court to appoint a guardian for an at-risk adult is delegated to the directors of county departments of social services, not to the courts. When, as here, an at-risk adult does not consent to the receipt of protective services, the statute does not indicate that DHS can be required by a court to provide those services or to file a motion requesting the appointment of a guardian. Thus, because of these statutory differences, *In re Co–Guardianship of D.A., supra,* has little persuasive force here.

There is, therefore, no indication the General Assembly intended to empower courts to order agencies like DHS to serve as guardians when "there is no qualified person willing and able," and we are not at liberty to create such authority out of whole cloth. *See Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.1994) (courts "will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate").

While we are mandated by principles of statutory construction and judicial restraint to reach this result, we do so recognizing there are many persons like Morgan who need guardians and, because of their circumstances, have no one to turn to except a public agency like DHS. Unfortunately, in Morgan's case, it appears there are no other statutory provisions that would require a public agency to assist her.

The dependency and neglect statutes no longer apply to her. Morgan was in DHS's custody until she turned twenty-one. During that period, both Morgan and DHS were subject to the court's continuing jurisdiction in the dependency and neglect action. *See* § 19–3–205, C.R.S.2006; *City & County of Denver v. Juvenile Court,* 182 Colo. 157, 164–65, 511 P.2d 898, 901–02 (1973) (welfare department did not have to be joined as an independent party in a child welfare case); *see also City & County of Denver v. Brockhurst Boys Ranch, Inc.,* 195 Colo. 22, 25, 575 P.2d 843, 845 (1978) (department of social services was "before the juvenile court" when it accepted custody of the child; courts have jurisdiction to order placement of a child in a private facility and to require a county department of social services to pay the cost); *People in Interest of M.D.C.M.,* 34 Colo.App. 91, 522 P.2d 1234 (1974)(while welfare department had custody and authority to place child for adoption, it was subject to court's control; department acts as court's agent).

As indicated above, the decision whether to provide services to, or seek a guardian for, an at-risk adult under § 26–3.1–104 rests within the discretion of the director of the county department of human services.

We are cognizant of the financial limitations on public agencies like DHS that re-

strict their capacity to act as guardians for incapacitated adults. Here, there was evidence DHS had only one employee funded to act as a guardian for incapacitated adults, who was already responsible for as many wards as one person could handle.

Yet, for persons like Morgan, who have been "wards of the State" for much of their lives and whose disabilities render them incapacitated as defined by law, guardianship through a public agency may be the last resort before they fall through the cracks of our society. *See Commonwealth v. Cabinet for Human Res.*, 686 S.W.2d 465, 468 (Ky.Ct.App.1984)("Without either guardian or conservator, the [ward] is in a desperate situation. Given the provisions of [Kentucky's statutory framework], it is clear that the legislature intended to see that mentally retarded individuals are cared for by the state.").

The order is reversed.

Judge CASEBOLT and Judge HAWTHORNE concur.